Anderson, J.,
delivered the opinion of the court.
By an act of assembly, in force April 1st, 1873, the owner or occupier of land having a water front, suitable for planting or sowing oysters thereon, might have *788 so much of the “beds or shores assigned to him by ° J the inspector of the district, for his exclusive use and occupancy for the period of one year, as the inspector might deem necessary for the quantity proPose(^ planted or sowed.” (Sess. Acts 1872-’3,. ch. 333, §§ 6, 7 and 8.) In pursuance of this act, Sallie and Eliza W. Tazewell, who were the owners of land having a water front suitable-for such pui’pose, had a part thereof assigned to them by the said inspector; which, before the 1st of May 1874, they caused to be “marked by suitable stakes,” in compliance with the requirement of the statute.
On the 3rd of June following, they had a summons issued from the clerk’s office of the Circuit court for Northampton county, against Joseph P. Power and Benjamin Kellog, plaintiffs in error here, alleging that they were in possession of and unlawfully detained from them the land and oyster grounds therein described, which are the same that were assigned to them as aforesaid; in which action they obtained judgment, and an award of the writ of habere facias possessionem; to which judgment the defendants obtained a writ of error and supersedeas from one of the judges of this court.
It is contended for the plaintiffs here, that the defendants in error have acquired no rights under the act of April 1st, 1873; and that if they have, and the plaintiffs in error have interfered therewith, they have mistaken their remedy. That it is not a case for an action of unlawful entry and detainer. That the statute does not authorize a grant of the soil, or an estate or interest in the soil; but only a license, which is an authority to do a particular act, or series of acts,, upon the land of which the commonwealth is proprietor, without passing an estate therein; and which license is revocable.
*789 Whether the statute can be construed as authorizing a lease or a mere license, it gives to the lessee or licensee an exclusive right to the use and occu-' pancy of beds or shores of creeks, &c., for the period of one year, for the purpose of planting or sowing oysters, which' might theretofore have been used or exercised in common by the citizens of the commonwealth. And the court is of opinion that after he has ■acquired such exclusive right under the statute, he may resort to the summary action of unlawful entry and detainer, as an appropriate remedy to assert and and enforce his exclusive right against any one who enters thereon and withholds from him the exclusive use and occupation thereof for the purpose aforesaid. And the court is further of opinion that the proof in this cause shows that the plaintiffs in error,- when the summons was issued had such occupation and possession of the premises as was incompatible with the enjoyment by the defendants of their exclusive right, if such right existed, to the use and occupation thereof for the purposes aforesaid, and that they withheld from them such possession.
The whole case then turns upon the question, had they an exclusive right to the use and occupancy of the premises when the summons was issued in this cause? In Olinger v. Shepherd, Judge Moncure, in delivering the opinion, in which a majority of a full court concurred, said: “There is a material difference between an action of ejectment and an action of forcible or unlawful entry. The title or right of possession is always involved in an action of ejectment. * * And the defendant without having any right to the possession himself, may generally prevent a recovery by the plaintiff by showing an outstanding right of possession in another.” In the action of unlawful entry *790 and detainer he says, “if the defendant enters unlawfully, the plaintiff is entitled to recover without any regard to his right of possession.” 12 Gratt. 462, 470. But it is necessary to show that the defendants’ entry was unlawful, and that he unlawfully withholds the-possession. And in this case, the defendants’ entry and withholding the possession of the premises was-not unlawful, unless the plaintiffs below had acquired the exclusive right to their use and occupancy, or had not lost their right to the priority. It would seem to-be necessary therefore in this case, to entitle the plaintiffs belowr to a recovery, that they should show an exclusive right to the use and occupancy of the premises, or, at least, a right of priority over the defendants. Had they acquired that exclusive right ?
It is contended that they' had not, and that position is supported by the counsel for the plaintiffs in error-in an argument of much ability and ingenuity. They insist that the act of 1873 only authorizes a license, which is revocable; and that the act of April 18, 1874, having repealed the act of April 1, 1873, it is a revocation of the license.
Hirst, is it a mere license which is revocable ? Licenses to do a certain act, but passing no estate in the land, may be pleaded without a deed. And this doctrine does not, we are told, trench upon the policy of the law which requires that contracts for the sale of real estate, or a lease thereof for more than one year,, shall be in writing. And the reason is, because licenses amount to nothing more than an excuse for the act which would otherwise be a trespass, and render the party liable to damages. Cook v. Stearnes, 11 Mass. R. 538. Such is not the nature of this act. It is not merely a permission to do an act or series of acts upon another’s land, which would excuse him *791 from trespass. It is not a permission to do certain r acts—that privilege was enjoyed independently of the statute—and the doing of those acts would have been no trespass. But the design and object of this statute was to give an exclusive right to the licensee or lessee, to use and occupy the land, for the period of one year, for his benefit, for a consideration payable to the state, the proprietor. It confers in fact an exclusive right to use, occupy or take the profits of land, by planting or sowing oysters upon it, which grow and fatten upon the soil and the salt water, and increase in value, I am informed, from seventy-five to one hundred per cent. Such a permission may be sometimes called a license. It is more in the nature of a lease. 1 Wash, on Real Property, 3d ed., p. 543, and cases cited. Licenses which in their nature amount to the granting of an estate for ever so short a time, are not good without deed (a lease for one year without writing is good by our statute), and are considered as leases, and must always be pleaded as such. And this is in fact the principle decided in the case of Cook v. Stearnes, 11 Mass. R., supra, cited by the counsel for the plaintiffs in error. In that case the defendant pleaded a license, and the court held that the plea was bad, because the interest claimed was not in the nature of a license, but of an estate, or at least an easement, in the land, which cannot be acquired without writing or prescription, or such a possession or use as furnishes presumption of a grant; neither of which is avowed in (the) plea.” There is nothing in that case which militates against the above view; but it in fact supports it. If a man license me to enter into his land, and to occupy it for a year, half a year or such like, this is a lease, and so shall be pleaded. Viner’s Abridg., title License, p. 92.
*792 Again, it cannot be maintained that the right acquired by the lessee or licensee is not transferable or transmissible at his death. Suppose there had been no repeal of the statute, or revocation, and that the defendants in error, after they had planted or sown oysters upon their.reservation, had made sale of their land fronting on the shore, and were about to remove from that country; can there be any question of their right to transfer their oyster grounds to the purchaser of their farm? Or if they died, that their oyster plantation, in the same plight in which they held it, would be transmitted to their personal representatives? Yet a mere license is so much of a personal trust and confidence, that it does not extend to any one but the licensee, and the death of either the licensor or the licensee, or the transfer by either party, will revoke it (1 Wash. on Real Property, p. 545). That is not the nature of the assignment in question, and it cannot be regarded therefore as a mere license.
If it is a liceQse it is coupled with an interest; it gives an exclusive right to use and occupy and take the profits of the soil upon which the oysters are planted or sown. It was anciently held, that “ there is a great diversity between a license in fact, which giveth an interest, and a license in fact which giveth only an authority or dispensation; for the one is not to be countermanded, but the other is.” Arg. Lane’s Rep. p. 46, citing 5 H. 7, and Mar. Dyer 92.
If it is a license, it is a license which not only gives an interest—a right to its exclusive use and occupancy—but gives it for a certain period, for one year, and for a valuable consideration which is paid. If a certain time is limited, it is not revocable though the thing is not done. Jenk. Rep. 209, pl. 41.
But whether it be a lease or a license, has there *793 been a revocation by the state in this case? If the ° state has not revoked it, though it be revocable, the defendants below could not derive advantage in defense upon the ground that it was revocable. There is no express revocation by the state. But it is argued that the repeal of the act of 1873, by the act of 1874, was a revocation of the license. It is enacted (chap. 15, § 13, p. 196, Code of 1873), “that no law shall be construed to repeal a former law;” first, “as to any right accrued; or,” second, as to any “claim arising under the former law;” “or in any way whatever to affect” “any right accrued, or claim arising,” “before the new law’ takes effect.” In this case it is at least a claim arising under the act of 1873, before the repealing act took effect, if indeed the right had not accrued. They had in all respects complied with the terms and requirements of the statute. They were entitled to a priority over all others on certain conditions, which they had fulfilled. They had made application in time to the inspector. They had paid the rent which wms the consideration of the assignments. And the assignments had been executed to them by the officer of the state, who was clothed with authority for that purpose.
But it is said that the payment of the rent was voluntary, that it was paid in advance of the obligation to pay, and therefore could give no good foundation for their claim. The statute does not say at what time the rent should be paid, whether in advance or during the year, or at its close. But it is argued that as rent is usually not due until the end of the year, it is presumable that the legislature did not intend that it should be paid until then; and that when the legislature intended otherwise, as in section 11, it expressly required the rent “to be paid in advance.” It may *794 rather be inferred therefrom, that in the mind of the-legislature the payment in advance was not incomwith the idea of rent. The requirement to pay advance not being expressed in the previous sec^ons does not imply that the legislature intended that it should not be paid in advance. But those sections-being silent as to the time of payment, it is implied that it was left to the discretion of the inspector to prescribe the. time of payment. And in the proper-exercise of his discretion having required the rents to be paid in advance, it was as obligatory upon the assignees as if it had been expressed in the statute.
The new act, which repeals the act of 1873, was approved on the 18th of April 1874. By the acts of assignment, which were executed when the act of' 1873 was in force, they were invested with the exclusive right to the use and occupancy of the premises, provided they caused them -to be marked by suitable stakes before the 1st of May 1874, which requirement and condition was strictly within the inspectors authority. They complied with that proviso to the letter,, and caused the reservations to be marked with suitable stakes before the 1st of May 1874; that is, about-the 26th of April. And the court is of opinion that although it was not done until after the. repealing act was passed, it was a fulfilment of the condition which entitled them to the right, and that upon the performance thereof their right to the exclusive use and occupancy of the premises vested, and cannot be affected in any way by the repeal of the former act.
The court is therefore of opinion to affirm the judgment with costs and damages to the defendants in error.
Judgment áeeirmed.