Christian J.
delivered the opinion of the court.
This is a writ of error to a judgment of the corporation court of the city of Norfolk.
The action was unlawful entry and detainer, brought by the city of Norfolk to recover of the appellee Cooke, the possession of a certain water lot described in the summons. A jury being waived by the parties, and all matters of law and fact being referred to the court, a judgment was entered for the defendant, the appellee here. To this judgment a writ of error was awarded by this court.
The only question we have to determine is, whether *431 upon the facts disclosed by the record, the city of Norfolk had the right of possession to the water lot described, in the summons; and whether upon these facts, the action of unlawful entry and detainer can be maintained.
The material facts shown by the record are as follows : The house of burgesses by an act passed in the first year of the reign of George HI, and to be found in 7 Hen. Stat. §§ 4, 5, pp. 435-6, declared that certain land in the borough of Norfolk, then known as the Fort land, should be vested in certain persons named in said act, as trustees and directors who should hold the same in fee simple, for the purpose of enlarging and securing said land, and erecting thereon a wharf and warehouses; and upon certain conditions the trustees were to convey the same to the county or borough of Norfolk. By another act 7 Hen. Stat. §§ 3, 4, 5, pp. 511-12, the trustees were required to convey to the borough of Norfolk to the exclusion of the county. A third act (8 Hen. Stat. pp. 269-70,) reciting that the trustees formerly appointed had formed themselves into the Town Point Company, perpetuated the succession of said trustees.
In July 1792 the Common Hall of Norfolk borough had the Town Point or Fort lands surveyed, and laid off into lots and streets. A copy of this plat was filed in the clerk’s office of the borough. This plat was recognized, together with the port warden line, established by the act of 1801, as an official map of the borough of Norfolk, in Harris’ case, 20 Gratt. 833.
In 1792, James Taylor and others, trustees of the Fort lands, or Town Point Company lands, in consideration of £2,000, the amount of advances made by them, conveyed by deed, bearing date August 1st, 1792, the said lands to the mayor, recorder, aldermen *432 and common councilmen of the city of Norfolk, in fee simple.
The deeds filed, and the authentic map of this property recognized by this court in Harris’ case, supra, show that the Fort land, or the Town Point property, extended westward to Parker street, the western limit of Parker street being the limit of the survey, investing the city of Norfolk with the title of the property to the line.
This plat shows that the city of Norfolk had extended its streets as occasion required, and sold or leased water lots down to Parker street, and without dispute extended the streets of the city to Parker street. Much of the land conveyed and claimed by the city of Norfolk was covered by water at high tide; but up to the line of Parker street there is no dispute as to the title of the city of Norfolk both to the lots and the streets running towards Elizabeth river down to Parker street.
As to the streets, Main, Kelly and Water streets, which bisect Parker street, running towards Elizabeth river, it is clear the city of Norfolk has the right—both under its charter and on well settled principles of law—the right to extend these streets out into the water as far as the port warden line.
According to the recognized plat of the Fort or Town Point lands, the city of Norfolk has the title to this property to the western boundary of Parker street, and the fee simple title to this street is in the city of Norfolk.
The city of Norfolk has, fop many years, claimed title, and exercised aets of ownership over the water lots lying west of Parker street, having, in 1841, sold one of these lots to Hardy & Bros., who built wharves thereon, and hold possession, of the same under title *433 derived from the city of Norfolk; and in 1867 having leased the other lot, which is a part, if not the whole, of the water lot in controversy to William and J. J. Swaine, whose interest in the same was sold under execution, and purchased by Chamberlaine and Grandy for the sum of $500. Afterwards, it seems, Chamberlaine and Grandy surrendered to the city all their interest in said water lots.
In November 1873, the defendant, Cooke, obtained from the commonwealth a patent for the water lot lying between Parker street and the port warden line, and adjoining the lot sold to the Hardys, it being the same lot which had been leased to'the Swaines, and purchased by Chamberlaine and Grandy, and by them surrendered to the city of Norfolk. Under this patent Cook entered and had built a small house on piles, and was in possession of it when this action was brought. His claim of title and his possession is under and by virtue of this patent.
Upon these facts, the question we have to determine is, whether the city of Norfolk can maintain against Cooke the action of unlawful entry and detainer, and is entitled to recover against him in this action. The corporation court decided that question in favor of the defendant; and it is this decision we now have to-review.
First, as to Cooke’s title: we think it is clear that the grant of the commonwealth is void. The patent conferred on Cooke only such title as was in the commonwealth. The lot called for in the patent was the bed of a navigable river, and was incapable of being granted to any individual. See Horne v. Richards, 4 Call. 441-449; Meade v. Haynes, 3 Rand. 33-36; French v. Bankhead, 11 Gratt. 169; Code 1873, chap. 62, § 1, p. 604; chap. 108, § 4; §§ 42, 43, 867. But *434 although Cooke’s patent is void, and he is a mere trespasser, yet being in possession, he cannot be turned out unless it can be shown that the city of Norfolk has the right of possession as against him. While it is not necessary in this action to show a fee simple title to the property in controversy in the city of Norfolk, it is essential at least to show the right of possession even against an intruder. This brings us to the consideration of the important question in the case, viz: whether the city of Norfolk has the right of possession to the water lot in controversy against the defendant, Cooke; or, in other words, whether the action of unlawful entry and detainer can, upon the facts of this case, be maintained against the defendant who has no title, and is in possession under a grant which is void.
Now it must be conceded that by virtue of the statutes, deeds and established plat, above referred to, the title to the Fort or Town Point lands up to the western boundary of Parker street, was vested in the city of Norfolk. This street though sometimes covered with water at high tide,,is one of the recognized streets of the city to which the city has the fee simple title. The city therefore. is the riparian owner of the water lots opposite the line of Parker street, and has the same rights and privileges as an individual owner.
These rights both at common law and by statute, are secured to the riparian owner, to erect wharves, piers, or bulk heads for his own use or the use of the public, subject only to such general rules and regulations as the legislature may prescribe; and the only limitation upon such right is, that navigation may not be obstructed, or the rights of others be injured. This is the common law rule; and the same rights are secured by statute in this state. Sec. 59, ch. 52, Code 1878, declares that, “ any person owning land upon a *435 water course may erect a wharf on the same, or a pier, •or bulk head, in such water course opposite his land, so that the navigation be not obstructed thereby, and so that such wharf, pier, or bulk head, shall not otherwise injure the private rights of any person.”
This right of the riparian owner is not a mere license or privilege, but is property, property in the soil, up to the line of navigability, though covered by water; for the wharf, pier or bulkhead, can only be built on the soil. It is not a mere easement to pass over the water, or a privilege to use the surface, but property in the soil under the water, on which to fasten and build such structures; and for this purpose, and subject to the restriction that navigation shall not be obstructed, is as much property as the land above the margin of a navigable stream.
This principle has been fully recognized by the supreme court of the United States in Yates v. Milwaukie, 10 Wall. U. S. R. 447, 504. Mr. Justice Miller, delivering the unanimous opinion of the court, says: “ But whether the title of the owner of such a lot extends beyond the dry land or not, he is certainly entitled to the rights of a riparian proprietor whose land is bounded by a navigable stream; and among those rights are access to the navigable part of the river from the front of his lot, the right to make a landing, wharf or pier, for his own use, or for the use of the public, subject to such general rules and regulations as the legislature may see proper to impose for the protection of the rights of the public, whatever those may be.
“ This riparian right is property, and is valuable; and though it must be enjoyed in due subjection to the rights of the public, it cannot be arbitrarily or eapri'dously destroyed or impaired. It is a right of which, *436 when once vested, the owner can only be deprived in accordance with established law, and, if necessary, that it be taken for the public good upon due compensation.” See also 7 Wall. U. S. R. 272, 289; 1 Black. 28; 1 Del. on Cor. § 70, note 3, § 72, note 2.
It is clear, therefore, that the city of Norfolk had the right of property in the water lot in controversy, and consequently the right of possession for the purpose of erecting wharves, piers or bulkheads, and could exercise that right whenever it chose to do so. For that purpose (subject to the only limitation imposed by the legislature, that the rights of navigation should not be obstructed), it had the right of exclusive possession, and upon this ground could maintain the action of. unlawful entry and detainer to recover possession unlawfully withheld, or an action of trespass against any wrong doer interfering with such right.
But the city of Norfolk can maintain this action upon another ground. It had had for many years, and at the time of the unlawful entry of the defendant, the actual possession of these water lots. I say actual possession, so far as such property is susceptible of actual possession. Of course, water lots cannot be in the literal occupation of the owner, but he may exercise such acts of ownership over them as constitute in law the actual possession. Such acts of ownership have been for many years exercised by the city of Norfolk. It has sold lots adjoining the one in controversy. It has leased for a number of years the very lot which the defendant has unlawfully taken possession of. By authority of law and order of the city council the port warden has marked off and designated these water lots, and they have been plotted and made a matter of record. By all these acts of ownership the city of Norfolk has had the actual possession of these water *437 lots as far as such property is capable of being reduced into actual occupation. Having in legal contemplation, such possession it may maintain an action to recover possession against one who wrongfully and unlawfully withholds it. This position is conclusively sustained by a recent decision of this court in the case of Power & Kellog v. Tazwells, 25 Gratt. 786. In that case the Tazwells, under authority of an act of the general assembly, had leased for one year from the state inspector of oysters, a lot covered by water below low water mark for the purpose of planting oysters thereon. The Tazwells had staked off the lot so as to designate it, but had planted no oysters thereon when defendants took possession of the lot. An action of unlawful entry and detainer was brought to recover the possession. It was insisted in that case, as it has been in this, that the action could not be maintained; that the lease of the state was only a license or privilege; that the Tazwells had no title and no right of possession to the bed of the river covered by water, and therefore could not maintain an action of unlawful entry and detainer. This court held otherwise, and declared that the lease to Tazwells was not a mere license or privilege, but that it conferred rights of property in the soil covered by water, to which the plaintiffs had the right of exclusive possession, and that the action of unlawful entry and detainer was a proper remedy. I refer to the able opinion of Judge Anderson in that case, as fully sustaining the principles upon which the city of Norfolk may maintain its action in this.
In that case, the lot covered by water was designated by stakes driven into the water to mark its boundaries. In this, the water lot claimed by the city of Norfolk was designated by the port warden line, made under *438 official authority, plotted, mapped, and put upon the-public records. In. that case, the only evidence of possession or acts of ownership was the driving down a few stakes. In this we have, in addition to the distinct and official designation, the fact, that for years the-city of Norfolk has leased out this and contiguous-water lots, and its right and title disputed by no one.
Another important fact to be mentioned in this connection is, that by its charter the city of Norfolk has. the right to extend its streets running at right angles-to Parker street out to the. port warden line; and a part of the lot claimed by Cooke is opposite the ends of these streets.
I am therefore of opinion, that the city of Norfolk,, for the purposes of extending its streets, building wharves, piers and bulkheads, or other structures in the interests of commerce, has a right of property in the soil covered by water contained in the survey within the port warden’s line and opposite Parker street. I think it had such possession in these lots at the time of the unlawful entry of Cooke, as to maintain against him the action of unlawful entry and detainer. As was said by Judge Moncure in Olinger v. Shepherd, “such possession is not confined to actual occupancy or enclosure: It applies to any possession which is sufficient to sustain an action of trespass. 12. Gratt. 462, 473.”
I think it would be technical in the last degree to> hold that the city of Norfolk is without remedy to recover possession of this valuable property, so necessary to the extension of its streets and the protection of its-commerce, because it is land covered by water, below low water mark, and was never in the actual occupancy of the city. The privilege to extend streets and build wharves would be of no value, if the soil (though *439 covered with water), over which such streets are to be built and such structures erected, may be taken possession of by another and not recovered by any action. This would be to give a right without a remedy—a thing unknown to the law. It would be unjust to the last degree to say that a commercial city, one which we hope to see at no distant day the great commercial emporium of the state, shall be deprived of her right to extend her streets and build her wharves in the interests of a growing commerce, by any squatter who may, with or without color of title, choose to occupy her water fronts; and that upon the merest technicality the city is without remedy to keep off intruders, or recover possession whenever she may choose to assert her right.
I am for reversing the judgment of the corporation court, and entering a judgment for the plaintiff for the premises mentioned in the summons.
Judgment reversed.