## Wytheville.

### CONSOLVO & CHESHIRE V. THE FERRIES COMPANY.

#### June 8, 1911.

1.  UNLAWFUL DETAINER—*Ferries—Adjacent Property—Franchise—Case at Bar.*—Unlawful detainer is the proper action to be brought by the lessee of a ferry and the wharfs, docks, landings and other property used for the purposes of the ferry against a third person who is in the possession of, and unlawfully withholds from him, a part of the land leased by him. This is not an action to recover a mere franchise, but land leased to the plaintiff. In the case at bar, certain made land is held to be a part of the ferry property and to have passed under the lease of the ferry, but even if it were not, the lease of it was made subordinate to the needs of the ferry property, and it is clearly proven to be necessary to the use of the ferry.

2.  UNLAWFUL DETAINER—*Parties—Defendant's Lessor.*—In an action of unlawful detainer by the lessee of two landlords owning jointly the beneficial interest in the leased premises against the lessee of one of such landlords holding the legal title to the land in dispute, the defendant's landlord is not a necessary party. The judgment, when rendered, settles nothing save the right of possession as between the parties to the action, and leaves the rights of the plaintiff and his lessors just as they were before the action was brought, to be determined by their contract of lease.

Error to a judgment of the Corporation Court of the city of Norfolk in an action of unlawful detainer.    Judgment for the plaintiff.    Defendants assign error.

*Affirmed.*

The opinion states the case.

*Edward R. Baird, Jr.,* for the plaintiffs in error.

*R. Randolph Hicks,* for the defendant in error.

HARRISON, J., delivered the the opinion of the court.

This action of unlawful detainer was brought by The Ferries Company against Consolvo & Cheshire, to gain possession of a small strip of land constituting part of the wharf or landing of the Norfolk county ferries. The disputed strip of land lies immediately east of Campbell's wharf, and has a width of five feet and five inches at its northerly extremity, and a width of eleven feet and five inches at its southerly extremity. That portion of the county wharf which lies immediately adjoining this narrow strip is used as a station and driveway for the wagons, trucks, carriages, etc., that are to be transported across the river.

It appears that, from an early day in the history of the country until the incorporation of the city of Portsmouth in the year 1858, the Norfolk county ferries were maintained by the county of Norfolk. By an act of the legislature, in March, 1858, the maintenance of these ferries was imposed jointly upon the city of Portsmouth and the county of Norfolk. This act provided, among other things, as follows: "No wharf or other property belonging to the Norfolk county ferry now established by law, or purchased for its use, shall be sold or otherwise disposed of without the concurrent consent of the council of the city of Portsmouth, and the court of said county of Norfolk, but shall be held for the use of said ferry."

The creation of the city of Portsmouth gave rise to a controversy between the county and the city as to their respective rights in this county dock. Arbitrators were appointed to settle their differences, who, among other things, found as follows: "As to the fifth item of said submission, viz: The rights of the said parties in the real estate situate in the city of Norfolk, now used as a landing for the Norfolk county and Berkley ferries, we do award, adjudge and decided, that the title to the said real estate, that is to say, the title to the soil or land itself, is in the

county of Norfolk only, which is the legal owner thereof; but that this title and ownership is subject to the joint right of the said county and city to the ferry landing, and right of way over the said soil or land, and that the rights and interests of the said city of Portsmouth in the said landing, as now used, or as it may be hereafter used, are commensurate and coequal with those of the said county."

These findings of the arbitrators passed into judgment as the final determination of the rights of the parties.

From 1858 to 1889 the city of Portsmouth and the county of Norfolk jointly operated these ferries; but in 1889, pursuant to an act of the legislature (Code 1887, sec. 1371), the ferries were leased by the county and city jointly to Gill & Thomas for a period of ten years; from 1899 they were leased to T. J. Wool and others for a period of ten years, and from 1909 they were leased for a like period to R. E. Jordan. The granting clauses in these three leases, executed respectively in 1889, 1899 and 1909, is as follows: The lessors " . . . do hereby demise and lease unto . . . subject to all and every of the terms and conditions set forth, the following property—to-wit: The property owned jointly by the city of Portsmouth and Norfolk county, known as the Norfolk county ferries, together with all the steamers, boats, their apparel and appurtenances, and the wharfs, docks, landings, buildings and all other property now owned by said city and county and now used, or subject to be used, for the uses and purposes of said ferries."

The last-named lease to R. E. Jordan, dated March 31, 1909, was for a period of ten years from that date, in consideration of an annual rental of $135,200.00, which, as compared with that paid under previous leases is very suggestive of the enormous increase of traffic over these ferries in later years. This lease by the city of Portsmouth and the county of Norfolk to R. E. Jordan was assigned

by him on the 10th day of April, 1909, to the plaintiff in this
action, The Ferries Company.

The strip in controversy was originally water, and was.
filled up by Gill & Thomas during their lease from 1889 to.
1899, and was used by them for billboard and storage pur-
poses. This strip, which is now a hard, substantial wharf
since it was filled up by the lessees, Gill & Thomas, was
used by the respective lessees without question during the
twenty years from 1889 to 1909, as part of the property
passing to them under their respective leases; and no
serious question can be made that it is a part of the wharf
or landing of the Norfolk county ferries, which are owned,
so far as their use and operation is concerned, jointly by
the city of Portsmouth and the county of Norfolk, and no
part of which can be sold or otherwise disposed of without
the concurrent consent of the city of Portsmouth and the
county of Norfolk, but must be held for the use of said
ferry. Acts of Assembly, 1857-8, p. 173.

When the city and county advertised the last lease to be
sold, March 30, 1909, they stated that they would lease, "The
property owned jointly by the city of Portsmouth and Nor-
folk county, known as the Norfolk county ferries, together
with all steamers, boats, their apparel and appurtenances,
and the wharfs, docks, landings, buildings and all other
property now owned by the said city and county, and
now used or subject to be used for the use and purposes
of said ferries."

On the same day (March 31, 1909) that the lease under
which the plaintiff claims the right to the possession of the
strip of land in question was executed by the county of
Norfolk and the city of Portsmouth, the county of Norfolk,
acting alone and without the concurrence of the city of
Portsmouth, leased the strip of land in controversy to
George W. Blanchard for a term of ten years. This lease
was assigned by Blanchard to L. M. Sylvester, who assigned

the same to Consolvo & Cheshire, the defendants in this action. So that the claim of the defendants to the possession of the land is under the lease mentioned from the county of Norfolk to Blanchard.

The strip of land in controversy being, as already seen, part of the Norfolk county ferries property, and owned, as to its use and enjoyment, jointly by the county and city, the county, under the express terms of the act of March 25, 1858, had no power to lease it to anyone without the concurrent consent of the city of Portsmouth. If, however, the county had possessed the power to lease, without the consent of the city, any part of the property, subject to use for ferry purposes, the conditions have arisen under which, by the terms of the lease made by it, the defendants must surrender to the Ferries Company the strip of land in controversy.

The Blanchard lease, under which the defendants claim, after describing the property demised as part of the Norfolk county dock property, provides as follows: "It being, however, understood and agreed between the parties hereto, that if it shall within the said period of ten years become necessary for the use and conduct of the said Norfolk county ferries, in the said city of Norfolk, that any portion of the property hereby demised shall be found to be necessary for the use of said ferries, then, and in that event, such portion shall be released and given up by the said party of the second part, and the Norfolk county ferries be allowed to occupy and use the same."

This provision of the lease under which the defendants claim is a clear recognition by the county of Norfolk, the lessor therein, that the strip in controversy is part of the Norfolk county ferries property, and expressly provides that it shall be surrendered at any time during the lease that it may be needed for ferry purposes. It conclusively appears from the evidence that the constantly increasing

use of these ferries by the public has so congested the traffic as to make the use of the strip in question essential for ferry purposes.

The facts in this case impel the conclusion, that the use of the property in controversy belongs jointly to the city of Portsmouth and the county of Norfolk, and that its use passed from them to R. E. Jordan under their joint lease to him of March 31, 1909, and by assignment from R. E. Jordan to the Ferries Company, the plaintiff in this case; that its present use by the Ferries Company is a necessity for the operation of the Norfolk county ferries and the public convenience; and, further, that the adverse claim, under the demise from Norfolk county, asserted by the defendants Consolvo & Cheshire is wholly inadequate to defeat the superior rights of the plaintiff.

It is difficult to appreciate the defendants' contention, that the plaintiff is asserting a right to a franchise and cannot maintain an action of unlawful detainer, the effect of a judgment in which is, as claimed, to give it an unqualified and absolute possession, when it is only entitled to a qualified right and qualified possession. The plaintiff is asserting a right to the possession of land that was leased to it by the owners thereof under a clear and explicit lease, which land is wrongfully in the possession of another. The effect of the judgment of the lower court is merely to hold that, under the facts shown of record, the plaintiff is entitled to the possession of the land in controversy, to be held by him in accordance with the terms of his lease contract.

Section 2716 of the Code of 1904 provides that the action of unlawful detainer shall be brought against the party in possession. That the property right asserted in this case by the plaintiff can be recovered in an action of unlawful detainer, see *Norfolk City* v. *Cooke*, 27 Gratt. 430; *Power & Kellog* v. *Tazewell*, 25 Gratt. 786.

In the case last cited, the Tazewells, under authority of

an act of the General Assembly, had leased for one year
from the State inspector of oysters a lot covered by water
below low-water mark for the purpose of planting oysters
thereon. The Tazewells had staked off the lot so as to
designate it, but had planted no oysters thereon when de-
fendants took possession of the lot. An action of unlawful
detainer was brought to recover the possession. It was
insisted that the action could not be maintained; that the
lease of the State was only a license or privilege; that the
Tazewells had no title and no right of possession to the bed
of the river covered by water, and therefore could not main-
tain an action of unlawful detainer. This court held other-
wise, and declared that the lease to the Tazewells was not
a mere license or privilege, but that it conferred rights
of property in the soil covered by water, to which the plain-
tiffs had the right of exclusive possession, and that the
action of unlawful entry and detainer was a proper remedy.

The defendant contends that the county of Norfolk should
have been made a party defendant to this action.

The county of Norfolk was not formally made a party,
but the record shows that it was represented by counsel,
who defended this suit through the lower court, and in this
court. It was, however, not necessary that it should be
a party. The county of Norfolk, it is true, was the holder
of the naked legal title to the property in controversy,
while it and the city of Portsmouth were the perpetual
joint and equal owners of the use and enjoyment thereof.
The county of Norfolk was not in the possession of the
property; on the contrary, it had united with the city of
Portsmouth in leasing the same to the plaintiff for a term
of ten years, and, therefore, neither its rights nor those
of the city of Portsmouth could be affected by a judgment
in favor of their lessee for land which rightfully belonged
to that lessee under the terms of their demise. The plain-
tiff had no other or different rights against its lessors after

the judgment in this proceeding was rendered than it had before. The judgment only settled the right of possession as between the lawful lessee of the property and the defendants, who are claiming the possession under another and different lease.

There is no error in the judgment complained of, and it must be affirmed.

*Affirmed.*